**George ELBERT, Plaintiff,**

v.

**HOWMEDICA, INC., Defendant.**

**Civ. No. 91–00616 BMK.**

United States District Court,
D. Hawaii.

Dec. 23, 1993.

---

**2.** The analysis was made using the Grammatik ® program in WordPerfect 6.0.®

Stanford Masui, Danny Vasconcellos, Takahashi & Masui, Honolulu, HI, for plaintiff.

Jacqueline Earle, Jennifer Clark, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for defendant.

*AMENDED ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW RE: PREEMPTION OF STATE TORT CLAIMS*

KURREN, United States Magistrate Judge.

## BACKGROUND

This is a products liability case concerning an allegedly defective artificial knee, a PCA Total Knee System, manufactured by defendant Howmedica, Inc. ("Howmedica"). The PCA knee prosthesis was implanted to replace the knee of plaintiff George Elbert's ("Elbert") left leg on September 21, 1986 to alleviate problems associated with degenerative arthritis. After less than four years, however, Elbert's knee failed. Surgery revealed that the polyethylene tibial insert in the knee prosthesis was fractured, and that the polyethylene was worn, causing substantial bone erosion. Elbert's treating physician revised the Howmedica device and implanted a new device back into Elbert's leg, after performing a bone graft on the damaged portion of Elbert's shin and thigh bones. Elbert subsequently brought this lawsuit against Howmedica under several tort theories.

Prior to trial, Howmedica moved for summary judgment, arguing that Elbert's claims of negligence, breach of warranty, and strict products liability are preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360k. That motion was denied. At the close of Elbert's case at trial, Howmedica unsuccessfully moved for judgment as a matter of law on, *inter alia*, the issue of preemp-

tion. After a jury trial, Howmedica was found negligent and to have breached implied warranties, but was absolved of strict liability. The jury awarded Elbert $196,775.00.

Howmedica, relying on assertedly new legal authority, renews its motion for judgment as a matter of law, in essence moving this court to reconsider the order denying its summary judgment motion regarding preemption. Specifically, Howmedica relies on *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1421 (5th Cir.1993) *cert. denied* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993), *King v. Collagen Corp.*, 983 F.2d 1130, 1138 (1st Cir.1993) *cert. denied* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *Kemp v. Pfizer, Inc.*, 835 F.Supp. 1015 (E.D.Mich. 1993), and *Reiter v. Zimmer, Inc.*, 830 F.Supp. 199 (S.D.N.Y.1993). Aside from not being controlling authority warranting this court to reconsider its order, the cases are inapplicable to the facts of the case at bar. The following discussion reaffirms and clarifies this court's earlier rulings regarding preemption.

### DISCUSSION

#### Preemption Standards

■ In order to maintain a uniform system of justice and regulation, federal law is made the supreme law of the land pursuant to Article VI of the United States Constitution. Federal law may preempt state law explicitly, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), implicitly where simultaneous conformance with state and federal law is impossible or would frustrate congressional intent, *Florida Avocado Growers v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or impliedly where the federal laws are so extensive as to cover the entire field of law at issue, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Administrative regulations, moreover, may have a preemptive effect on state law equal to that of federal statutes. Regulations of the federal agency charged with administering a federal act are dispositive on the question of preemption, unless the agency's position is inconsistent with clearly expressed congressional intent or subsequent developments reveal a change in Congress' position. *Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 714–15, 105 S.Ct. 2371, 2375–76, 85 L.Ed.2d 714 (1985).

■ In such a federal system of government, however, the autonomy of the sovereign states is respected such that there exists a presumption against interpreting federal law as preemptive. *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). Consistent with such a presumption, when Congress includes a provision that defines the scope of the preemptory effect of a particular act, the provision is to be narrowly construed and matters beyond the reach of the provision are not preempted. *Id.* This presumption against preemption in mind, Howmedica's motion is denied.

#### The Medical Devices Amendments

■ In 1976, Congress enacted the MDA to 21 U.S.C. §§ 301–360 (1976), the Drugs and Devices section of the Federal Food, Drug, and Cosmetic Act. Pub.L. No. 94–295 § 2, 90 Stat. 574 (1976). The MDA was enacted to address the perceived inadequacy of existing law to protect consumers from "increasingly complex devices which pose serious risk if inadequately tested or improperly designed or used." S.Rep. No. 33, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 1070, 1075.

In order to distinguish among the plethora of existing and proposed medical devices, the MDA establishes a system that classifies the devices by: 1) information available on the device; 2) a device's potential to inflict illness or injury; 3) the controls available to provide a reasonable assurance of the safety and effectiveness of the device; and 4) whether the device is used for supporting or sustaining human life or for preventing impairment of human health. 21 U.S.C. § 360c(a). Class I devices, such as crutches and tongue depressors, are those that pose little or no threat to health and, consequently, are subject only to the most general of controls. 21 U.S.C. § 360c(a)(1)(A). Class II devices pose a slightly greater risk to health to war-

ranting, in some cases, special controls, *e.g.* postmarket surveillance, patient registries, performance standards, and other guidelines. 21 U.S.C. § 360c(a)(1)(B). Class III devices present a potential unreasonable risk of illness or injury such that the devices are required to undergo a thorough premarket approval ("PMA") process before introduction. 21 U.S.C. § 360c(a)(1)(C) and 360e. Finally, certain devices are given an "investigational device exemption" to encourage innovation and experimentation in those situations in which extraordinary remedies are warranted, with a patient's full consent. 21 U.S.C. § 360j.

Congress did not intend, however, to preempt all state laws which would be applicable to the devices classified. The MDA contains a provision expressly addressing its preemptive scope:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any *requirement* —
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter *to the device,* and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (Supp.1992) (emphasis added).

The FDA, moreover, promulgated regulations implementing § 360k. Under 21 C.F.R. § 808.1(d) (1992): "State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act."

Under 21 C.F.R. § 808.1(b) (1992), § 360k applies to any state or local requirement "having the force and effect of law (whether established by statute, ordinance, regulation or court decision)." Consequently, where sufficiently specific FDA regulations pertaining to device design and construction have not been found, state law claims of defective design, composition, and construction have been held to be outside the preemptive scope

of § 808.1(d). *Moore v. Kimberly–Clark Corp.,* 867 F.2d 243, 247, *rehearing denied,* 873 F.2d 297 (5th Cir.1989) (sections and regulations applicable to Class II device do not preempt state law claims of negligent design and breach of warranty); *Bejarano v. International Playtex, Inc.,* 750 F.Supp. 443, 446 (D.Idaho 1990) (claims for failure to properly design and construct tampons not preempted).

### The PCA Knee Prothesis

The PCA knee prosthesis that was implanted into Elbert's leg was classified as a Class II device. The relevant regulation is 21 C.F.R. § 888.3560 (1992) entitled "Knee Joint Patello-femorotibial polymer/metal/polymer semi-constrained cemented prosthesis." That section provides:

> (a) *Identification:* A knee joint patello-femorotibial polymer/metal/polymer semi-constrained cemented prosthesis is a device intended to be implanted to replace a knee joint. The device limits translation and rotation in one or more planes via the geometry of its articulating surfaces. It has no linkage across-the-joint. This generic type of device includes prostheses that have a femoral component made of alloys, such as cobalt-chromium-molybdenum, and a tibial component or components and a retropatellar resurfacing component made of ultra-high molecular weight polyethylene. This generic type of device is limited to those prostheses intended for use with bone cement.

Howmedica argues that this provision is specific enough to preempt Elbert's claims which "relate to the safety or effectiveness of the device or to any other matter" concerning the design of the device. Elbert, on the other hand, argues that the provision expressly limits itself to "identification" of the type of prosthesis involved and does not prescribe or establish standards for design, composition, or construction.

The issue thus revolves around whether the MDA, or the agency responsible for their implementation, the FDA, has imposed any "requirements" on the device at issue which would preempt state law with respect to those requirements. In denying Howmedi-

ca's motion for summary judgment, this court held that the Class II device implanted in Elbert's leg had no such requirements imposed upon it which would preempt the state tort claims asserted by Elbert. Neither the cases relied upon by Howmedica nor the evidence produced at trial persuade this court otherwise.

Howmedica relies on case law inapposite to the facts at issue. *King, supra, Stamps, supra, Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th Cir.1992), *Kemp, supra,* and *Reiter, supra,* concern devices classified as either a Class III or provided an investigational exception.

*Stamps* addressed the distinction between Class I, II, and III devices, finding, as did the First Circuit in *King,* that the extensive, *premarket* regulatory scheme applicable to Class III devices, because of the devices' "potential unreasonable risk of illness or injury," imposes requirements relating to design and manufacture that would preempt state claims relating to the same. *Stamps,* 984 F.2d at 1419, and *King,* 983 F.2d at 1135, *citing* 21 U.S.C. § 360c(a)(1)(C). The rationale supporting preemption is based on an investigation, and subsequent approval, of a committee of experts arising out of a detailed "application for premarket approval." 21 U.S.C. § 360e(c).

Devices classified as "investigational" are subject to an exemption from the usual requirements relating to the safety and efficacy of a medical device before it can be sold. 21 U.S.C. § 360j. Such exemptions encourage innovation and experimentation which may benefit health care. Recipients of such devices are informed of the device's status and the risks involved, while an institutional review committee monitors the clinical investigations. Accordingly, the FDA imposes strict requirements regarding design, manufacture, and safety, preempting states from passing laws, whether court or legislature initiated, affecting such requirements. *Slater,* 961 F.2d at 1332.

Class II devices do not have nearly as extensive requirements imposed upon them as do Class III or investigational devices. Significantly, Class II devices are not subject to the rigorous § 360e premarket approval process. The regulations concerning the PCA knee system at issue, a Class II device, are intended for identification purposes only. 21 C.F.R. 888.1(b); *Cf. Krause v. Kimberly-Clark Corp.,* 749 F.Supp. 164 (W.D.Mich. 1990) (state law tort claims of negligence and breach of implied warranty allowed against Class II device). As such, no requirements are imposed on the PCA knee that was implanted in plaintiff's leg which would preempt state tort claims.

The only case cited by Howmedica that preempted negligent design and manufacture claims regarding a similar device is *Cameron v. Howmedica Div. of Pfizer Hosp.,* 820 F.Supp. 317 (E.D.Mich.1993). The court in *Cameron* held that the "identification" provision effectively preempted the plaintiff's negligent design claim, finding that "[t]his regulation plainly discusses the design of hip replacement devices." *Id.* at 320.

The reasoning in *Cameron* is unpersuasive, as the plain language of the FDA's regulations reveal. 21 C.F.R. § 888.1(a) and (b) explicitly state that the scope of § 888 is limited to classification purposes and "[t]he identification of a device in a regulation in this part is not a precise description of every device that is, or will be, subject to the regulation." The purpose is simply to identify the knee joint as an orthopedic device in commercial distribution that is intended for human use and classify it accordingly. Moreover, the regulation that identifies the prosthesis clearly states that "[t]his *generic* type of device *includes* prostheses that have ...". 21 C.F.R. 888.3560 (emphasis added).

The FDA, by expressly limiting the purpose of the section in question to identification and classification, and not promulgating specific regulations pertaining to *design* and *construction,* has provided that state law claims of defective design, composition, and construction are outside the preemptive scope of § 808.1(d). In other words, the identification parameters of the knee joint device in § 888.3560 are not "requirements" that would trigger federal preemption under §§ 360k and 808.1(d).

Other case law dealing directly with a Class II device, tampons, is uniform in the

allowance of state tort claims for defective design and manufacture. *Moore, supra; Bejarano, supra; Krause, supra; Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475 (S.D.Ind.1988). Preemption of the claim of failure to provide adequate warnings of toxic shock syndrome was based upon an existing regulation specific to tampons that required a toxic shock syndrome warning printed on every box of tampons sold. 21 C.F.R. § 801.430. No such specific regulation was in effect as to the prosthetic knee device at issue.

In light of the other, "Class III," cases relied upon by Howmedica its preemption argument is based upon the device at issue being classified a Class III device. In support of its theory, Howmedica cites to the testimony of Christopher B. Lawlor, manager of technical relations of Howmedica, who stated that the Class II, cemented version of the PCA knee prosthesis that was implanted is identical to the non-cemented PCA knee prosthesis that later went through Premarket Approval ("PMA") and classified as a Class III device. Not only does this argument ignore the specificity of the identification regulations at issue: "This [the Class II version] generic type of device *is limited* to those prostheses intended for use *with bone cement,*" 21 C.F.R. § 801.430 (emphasis added), but the same argument was raised in Howmedica's summary judgment motion; it is equally unsuccessful here, especially after the facts revealed at trial.

The trial testimony of Howmedica's own expert, Dr. Stephen Cook, whose lab performs detailed studies of similar or identical prostheses retrieved from patients' legs, demonstrated that the Class II, cemented version of the PCA knee prosthesis device was subject to functionally different stress dynamics than the "approved," Class III, non-cemented device. In denying summary judgment, this court found that the devices could not be equated for the purposes of preemption. No evidence was forthcoming that would alter that opinion.

More importantly, the FDA chose not to classify the type of device implanted in Elbert's leg as a Class III device. Howmedica, by arguing that the Class II device implanted in Elbert's leg was entitled to be treated in the same manner as a Class III device, is essentially asking this court to review, and then modify, a factual decision of a government agency. Given the technical nature of the MDA and the expertise required by the committees responsible for classifying devices,[1] it would be inappropriate to second-guess the FDA on this issue. *FPC v. Florida Power & Light Co.,* 404 U.S. 453, 463, 92 S.Ct. 637, 643–44, 30 L.Ed.2d 600 (1972) (deference should be given to administrative agency's factual determinations that are based on agency's technical expertise).

### CONCLUSION

Howmedica has provided no law or fact warranting this court to alter its prior opinion that no preemptive effect accrues to the MDA's classification of the PCA knee prosthesis as a Class II device. Accordingly, this court's prior order is reaffirmed.

IT IS SO ORDERED.

---

1. 21 U.S.C. § 360c(b)(1) provides, in pertinent part:

For purposes of—
   (A) determining which devices intended for human use should be subject to the requirements of general controls, performance standards, or premarket approval, and
   (B) providing notice to the manufacturers and importers of such devices to enable them to prepare for the application of such requirements to devices manufactured or imported by them,

the Secretary shall classify all such devices ... into the classes established by subsection (a) of this section. For the purpose of securing recommendations with respect to the classification of devices, the Secretary shall establish panels of experts or use panels of experts established before May 28, 1976, or both.