USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1911 ELLEN MENDES, Plaintiff, Appellant, v. MEDTRONIC, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ John P. LeGrand, with whom Thomas F. Walsh and John P. LeGrand & ________________ _______________ _________________ Associates, P.C. were on brief for appellant. ________________ Richard H. Bakalor, with whom Quirk & Bakalor, P.C., Michael W. ___________________ ______________________ ___________ Gallagher, Andrea Saunders Barisano, Donahue & Donahue, Dan Jarcho and _________ ________________________ _________________ __________ McKenna & Cuneo were on brief for appellee. _______________ ____________________ March 9, 1994 ____________________ BOWNES, Senior Circuit Judge. In this products BOWNES, Senior Circuit Judge. _____________________ liability action against the manufacturer of an allegedly defective pacemaker, plaintiff-appellant, Ellen Mendes, appeals from an order granting summary judgment in favor of defendant-appellee, Medtronic, Inc. The district court entered summary judgment for Medtronic, ruling that the express preemption clause of the Medical Device Amendments (MDA) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 360k(a), preempted plaintiff's Massachusetts common law claims.1 We affirm. I. I. BACKGROUND BACKGROUND __________ Congress enacted the MDA to give the Food and Drug Administration (FDA) comprehensive control over medical devices for the first time. Slater v. Optical Radiation ______ _________________ Corp., 961 F.2d 1330, 1331 (7th Cir.), cert. denied, 113 S. _____ _____ ______ Ct. 327 (1992). The MDA reflects Congress's balancing the need for regulation to protect public health against its interest in allowing new and improved devices to be marketed expeditiously without the costs attributable to an excess of regulation. King v. Collagen Corp., 983 F.2d 1130, 1138-39 ____ ______________ ____________________ 1. Jurisdiction is based on diversity of citizenship. Defendant asserts and plaintiff does not dispute that Massachusetts law applies. We agree that plaintiff's tort claims arise under Massachusetts law. -2- 2 (1st Cir.) (Aldrich, J., concurring), cert. denied, 114 S. _____ ______ Ct. 84 (1993). Pursuant to the MDA, FDA groups medical devices into three classes based on the degree of regulation necessary to assure safety and effectiveness. See 21 U.S.C. ___ 360c; H.R. Conf. Rep. No. 1090, 94th Cong., 2d Sess. 55 (1976), reprinted in 1976 U.S.C.C.A.N. 1103, 1107. All _________ __ classes of devices are subject to "general controls," including labeling requirements and good manufacturing practices. See, e.g., 21 U.S.C. 360i, 360j. Class III ___ ____ devices, such as pacemakers, pose the greatest risks. Such devices may be sold only if FDA finds that they are "substantially equivalent" in design and function to devices on the market before the MDA became effective in 1976, or--in the case of new or improved devices--if FDA grants premarket approval. Id. 360c(a)(1)(C), 360e(b); 21 C.F.R. ___ 807.100. Devices found to be "substantially equivalent" are entitled to bypass the premarket approval process unless or until FDA issues a regulation specifying that the device undergo the review process. On May 14, 1986, a Medtronic pacemaker, a Class III device, was implanted into plaintiff. Medtronic had distributed the pacemaker since 1981 without premarket approval because no regulation specifically required premarket approval, and because FDA found the pacemaker to be -3- 3 substantially equivalent to pre-MDA pacemakers. On March 10, 1992, the pacemaker failed, and plaintiff nearly died. The pacemaker was surgically removed, anda new model implanted. Plaintiff filed a complaint alleging that Medtronic was negligent in designing, manufacturing, and distributing her pacemaker. She also included claims alleging Medtronic's failure to provide adequate warnings, and breach of the implied warranty of merchantability. Medtronic moved for summary judgment on the ground that 21 U.S.C. 360k(a) preempted all of plaintiff's claims. The district court granted the motion, and plaintiff appealed.2 Standard of Review Standard of Review __________________ Our review of a district court's summary judgment decision is plenary. FDIC v. Anchor Properties, No. 93-1542, ____ _________________ slip op. at 9 (1st Cir. Jan. 5, 1993). Summary judgment is appropriate when the pleadings and affidavits raise no ____________________ 2. On the date the order granting summary judgment was entered, plaintiff moved to amend her complaint. The proposed amended complaint reiterated the claims in her original complaint and added causes of action for breach of express warranty, negligent infliction of emotional distress, and strict liability. The proposed complaint also clarified that she was alleging that her particular pacemaker, as __________ opposed to the model, was defective. The district court denied the motion to amend after plaintiff filed an appeal of the summary judgment order. Plaintiff's brief neither challenges the district court's rejection of her proposed amended complaint, nor refers specifically to any of the claims raised solely in her amended complaint. Because our review is limited to the issues raised on appeal, we confine our analysis to the claims in the original complaint on which the district court granted summary judgment. -4- 4 genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Id.; see also ___ ___ ____ Fed. R. Civ. P. 56(c). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of material fact. Celotex Corp. v. ______________ Catrett, 477 U.S. 317, 325 (1986). Evidence in the record _______ supports that plaintiff's pacemaker was defective; that the defect caused plaintiff's injuries; and that Medtronic was aware, before the pacemaker failed, that the model might not work properly. Medtronic asserted in its motion for summary judgment that "[t]here are no genuine issues of material fact since even if plaintiff could prove all her factual allegations," her claims would be preempted. Medtronic also stated, "[f]or the purposes of its Motion for Summary Judgment only," that it did not dispute the following ____ allegations of plaintiff: 1. [A] Medtronic [pacemaker], model number 5984LP (the "device"), [was] implanted into [plaintiff] on May 14, 1986 . . . . 2. [T]he device failed on March 10, 1992 . . . . 3. This alleged failure caused a near death circumstance and plaintiff was required to undergo emergency surgery to remove the . . . device . . . . 4. [Plaintiff's] injuries . . . were due to defects in the labeling, design and manufacture of the device . . . . -5- 5 Def.'s Mot. for Summ. J., at 2-3 (emphasis in original). We take these assertions at face value. We assume plaintiff's factual allegations are true, and we examine the legal issues in this light. Medtronic does not contend that plaintiff's allegations fail to state a claim under Massachusetts law. The sole issue addressed by the parties and the district court is preemption, which is the key issue on appeal. II. II. PREEMPTION PREEMPTION __________ Medtronic argues that the Act implicitly and expressly preempts plaintiff's claims. Congress's intent is the touchstone of preemption analysis. Cipollone v. Liggett _________ _______ Group, 112 S. Ct. 2608, 2617 (1992); King v. Collagen Corp., _____ ____ ______________ 983 F.2d at 1133. State common law claims may be preempted along with state statutes and regulations, if Congress so intended. See, e.g., Cipollone, 112 S. Ct. at 2620; King v. ___ ____ _________ ____ E.I. Dupont de Nemours & Co., 996 F.2d 1346, 1349-50 (1st ______________________________ Cir.), cert. dismissed, 114 S. Ct. 490 (1993); King v. _____ _________ ____ Collagen Corp., 983 F.2d at 1134-35. ______________ "Congress' intent may be `explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" Cipollone, 112 S. Ct. at 2617 (quoting Jones _________ _____ v. Rath Packing Co., 430 U.S. 519, 525 (1977)). The MDA _________________ -6- 6 contains an express preemption provision, 21 U.S.C. 360k(a), that states, in pertinent part: [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement -- (1) which is different from, or in addition to, any requirement applicable under [the Federal Food, Drug, and Cosmetic Act] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the Federal Food, Drug, and Cosmetic Act]. Congress's intent in enacting this provision was to prevent state requirements from unduly burdening interstate commerce. See H.R. Rep. No. 853, 94th Cong., 2d Sess. 45 (1976), ___ reprinted in An Analytical Legislative History of the Medical _________ __ ________________________________________________ Device Amendments of 1976, app. III, at 45 (Food & Drug L. __________________________ Inst. Series, Daniel F. O'Keefe, Jr. & Robert A. Spiegel eds., 1976). We construe this preemption clause with due regard for the interests of federalism because it affects state public health regulation. A federal act will supersede "`the historic police powers of the states,'" only if that is "`the clear and manifest purpose of Congress.'" King v. Collagen ____ ________ Corp., 983 F.2d at 1134 (quoting Cipollone, 112 S. Ct. at _____ _________ 2617); see also CSX Transp. v. Easterwood, 113 S. Ct. 1732, ___ ____ ___________ __________ 1737 (1993); Greenwood Trust Co. v. Massachusetts, 971 F.2d ____________________ _____________ -7- 7 818, 823 (1st Cir. 1992), cert. denied, 113 S. Ct. 974 _____ ______ (1993). Viewing section 306k(a) in light of this presumption against preemption, we have held that it expresses Congress's intent to preempt certain common law claims because such claims may establish state "requirements." King v. Collagen Corp., 983 F.2d at 1138; ____ ______________ accord Stamps v. Collagen Corp., 984 F.2d 1416, 1420 (5th ______ ______ ______________ Cir.), cert. denied, 114 S. Ct. 86 (1993); cf. CSX Transp., _____ ______ ___ ___________ 113 S. Ct. at 1737 (discussing holding in Cipollone that _________ "federal statute barring additional `requirement[s] . . . `imposed under state law'' pre-empts common-law claims" (citation omitted)). To determine the extent to which plaintiff's claims are preempted, we need only identify the preemptive reach of the statute's express language. Cipollone, 112 S. Ct. at _________ 2618 (plurality); id. at 2625 (Blackmun, J., concurring in ___ part and dissenting in part). We thus reject at the outset Medtronic's argument that this is an implied preemption case. See King v. Collagen Corp., 983 F.2d at 1134; Stamps, 984 ___ ____ _______________ ______ F.2d at 1420. When "Congress includes an express preemption clause in a statute, judges ought to limit themselves to the preemptive reach of that provision without essaying any further analysis under the various theories of implied preemption." Greenwood Trust, 971 F.2d at 823. _______________ -8- 8 Our first task is to outline the Act's requirements applicable to the device. Thereafter, we scrutinize plaintiff's claims, to determine whether the successful litigation of any of them would "establish or continue in effect" a "different" or "addition[al]" requirement. 21 U.S.C. 360k(a). This analysis determines whether plaintiff's claims are preempted. 21 C.F.R. 808.1(d) (state requirements are preempted where "there are . . . specific requirements applicable to a particular device under the act"). The pacemaker at issue is a Class III device. Although Class III devices are generally subject to stringent design, manufacturing, and labeling controls pursuant to the premarket approval process, 21 C.F.R. pt. 814, FDA has never required that the pacemaker model implanted in plaintiff comply with the premarket approval regulations. Id. ___ 870.3610(c). The only requirements under the Act applicable to the device are regulations on labeling and "good manufacturing practices." Id. pts. 801, 820. ___ Next, we examine plaintiff's claims to determine whether their resolution would establish or perpetuate any requirements under the common law differing from or adding to the Act's requirements. The complaint states: Prior to May 14, 1986 the defendant Medtronic Inc. . . . manufactured a certain device [known] as a pacemaker. -9- 9 As a result of the negligence of the defendant, Medtronic Inc., in control, maintenance, inspection, testing, design, developing, servicing, distribution, alteration, modification, sale and/or manufacturing of said device, and as a _____________________________ result of the negligence of said defendant . . . in placing said Medtronic pacemaker model #5984LP in the stream of medical care and failing to give adequate and effective warning concerning the [foreseeable] dangers in the use of said device, the plaintiff . . . was caused to be injured on March 10, 1992, by this ____ defective pacemaker. ___________________ . . . . . . [I]n supplying this said __________ device the defendant contended [that] ______ said pacemaker was of good and ________________ merchantable quality and that it was fit and safe for the normal use for which it was intended[.] . . . [S]aid device was ______________ not of merchantable quality and was not fit for safe and normal use in that . . . the defective pacemaker malfunctioned. _______________________ (Emphasis added.) The highlighted statements allege that plaintiff's particular pacemaker was negligently manufactured; the reference to the model number of the pacemaker is consistent with claims that the label carried inadequate warnings, and that the design of the device was defective. Plaintiff's complaint thus contains three types of claims, each sounding in negligence and breach of implied warranty: design defect, failure to warn, and manufacturing defect. The complaint contains no allegation regarding Medtronic's compliance with FDA regulations, and plaintiff has offered no evidence on that issue. -10- 10 In her brief, plaintiff abandoned any claim of defective design.3 At oral argument, plaintiff contended that her allegations of Medtronic's negligence in "alter[ing]" and "modif[ying]" the device survived her abandonment of the design defect claims. According to plaintiff, these claims allege that Medtronic failed to obtain FDA approval prior to distributing the modified pacemaker model implanted in plaintiff. It is undisputed, however, that FDA cleared the pacemaker for marketing without approving the product design, finding it "substantially equivalent" to pre-MDA devices. See 42 Fed. Reg. 42,520, ___ 42,525 (Aug. 23, 1977) (preamble to final rule) ("[A] determination of substantial equivalence . . . relates to the fact that the product can lawfully be marketed without premarket approval or reclassification."); 21 C.F.R. 807.97 (a finding of substantial equivalence "does not in any way denote official approval of the device"). FDA regulations ____________________ 3. Plaintiff's brief states: Ellen Mendes does not claim that the entire product line from which her pacemaker was manufactured was defective. The claims in this action do not allege that the safety and effectiveness of Medtronic, Inc.'s pacemaker device, as it was designed and approved by the FDA, caused Ellen Mendes's injuries. The claims in her complaint allege that Mrs. Mendes was injured because Medtronic, Inc. manufactured and distributed this specific pacemaker device which was itself individually defective and the direct cause of her injuries. -11- 11 have never required that the pacemaker of the model implanted in plaintiff receive premarket approval. See 21 C.F.R. ___ 870.3610(c). Moreover, plaintiff has not alleged that FDA's substantial equivalence finding was improper. Therefore, plaintiff's product line alteration and modification claims fall from this case. If the claims are design defect claims, they have been abandoned. And if the claims allege that FDA failed to grant the device premarket approval, they are meritless. Plaintiff's abandonment of her design defect claims also forecloses our consideration of her argument that, in the absence of a requirement that the device receive premarket approval, her design defect claims are not preempted. The cases cited by plaintiff to support that argument are thus inapposite. See, e.g., Larsen v. ___ ____ ______ Pacesetter Systems, 837 P.2d 1273, 1282 (Haw. 1992) (design __________________ defect claims are not preempted where FDA never approved device design because device was found to be substantially equivalent to pre-MDA devices); see also Stamps, 984 F.2d at ___ ____ ______ 1419, 1421-22 (discussing Moore v. Kimberly-Clark Corp., 867 _____ ____________________ F.2d 243, 246 (5th Cir. 1989) (design defect claims are not preempted by requirements applicable to tampons, which are Class II devices not subject to premarket approval)). Plaintiff's only remaining common law claims, sounding in negligence and breach of warranty, are -12- 12 allegations of inadequate warnings and a manufacturing defect. In this connection, the MDA provides that a state requirement, if different from or in addition to an FDA requirement, is preempted only if it "relates to" the safety or effectiveness of the device or to any other requirement under the Act. 21 U.S.C. 306k(a)(2). All of plaintiff's claims relate to the pacemaker's safety and effectiveness. See Stamps, 984 F.2d at 1422. Consequently, to complete our ___ ______ preemption analysis, we must determine whether plaintiff's negligence and implied warranty claims, if successful, would impose requirements on Medtronic's pacemaker "different from, or in addition to" those in the Act. 21 U.S.C. 306k(a)(1). The common law, no less than agency regulations and statutes, can impose "requirements" on a manufacturer. King ____ v. Collagen Corp., 983 F.2d at 1135; see also 21 C.F.R. _______________ ___ ____ 808.1(b) (MDA preempts any state requirement "whether established by statute, ordinance, regulation, or court decision"). The tort and implied warranty theories of products liability are regulatory in that the "`obligation to pay compensation can be . . . a potent method of governing conduct and controlling policy.'" Cipollone, 112 S. Ct. at _________ 2620 (quoting San Diego Bldg. Trades Council v. Garmon, 359 _______________________________ ______ U.S. 236, 247 (1959)). Products liability "regulation" under the common law imposes requirements by case law precedent. -13- 13 Comparing the requirements imposed by the Act with plaintiff's claims, we hold that her negligence and implied warranty claims premised on inadequate warnings are preempted. FDA regulates the content and appearance of prescription medical device labels, including pacemaker labels. 21 C.F.R. 801.1, 801.15, 801.109. These regulations, which were in effect when plaintiff's particular pacemaker was implanted, exempt such devices from the requirement that there be directions to a layperson on how to use the product safely, if the package describes, inter alia, _____ ____ "any relevant hazards, contraindications, side effects, and precautions" for the prescribing physician. Id. 801.109. ___ Plaintiff's implied warranty and negligent failure to warn claims are premised on the manufacturer's duty to disclose to a physician any latent, foreseeable dangers associated with the use of a prescription product. Knowlton ________ v. Deseret Medical, Inc., 930 F.2d 116, 120 & n.2 (1st Cir. _____________________ 1991) (discussing Massachusetts law). Although this standard resembles the FDA requirement, the two may differ as applied. See Jones, 430 U.S. at 526 (in determining preemption issue, ___ _____ it is necessary "to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written"). Applying Massachusetts law, a factfinder could find a label deficient that complies with FDA requirements. MacDonald v. Ortho Pharmaceutical Corp., _________ __________________________ -14- 14 475 N.E.2d 65, 70-71 (Mass.) (holding that "compliance with FDA requirements, though admissible to demonstrate lack of negligence, is not conclusive on this issue, just as violation of FDA requirements is evidence, but not conclusive evidence, of negligence"), cert. denied, 474 U.S. 920 (1985). _____ ______ Such a finding would establish a standard for an adequate warning "in addition to" the requirements applicable under the Act. Similarly, plaintiff's negligent manufacturing claim (including her allegations of negligent manufacturing, control, maintenance, inspection, testing, servicing, distribution, and sale of the device) is preempted by FDA regulations on good manufacturing practices. 21 C.F.R. 820.1-820.198. Medtronic's duty under the common law of negligence is to use reasonable care in inspecting, testing, and producing pacemakers. This standard and FDA's good manufacturing practices impose analogous, but not identical duties. FDA's good manufacturing practices regulations require manufacturers to develop and implement "appropriate," "adequate," or "sufficient" quality control, quality assurance, personnel training, environmental controls, equipment maintenance, testing, inspection, and storage and distribution procedures, to assure that devices are safe and effective. See, e.g., id. 820.1, 820.5, 820.20, 820.25. ___ ____ ___ The quality assurance requirement, for example, mandates that -15- 15 manufacturers devise and implement a protocol to ensure, among other things, that all components, labels, packaging, and finished devices are inspected, and either approved or rejected. Id. 820.20(a). A factfinder could find ___ liability on plaintiff's negligent manufacturing claims, applying standards differing from or adding to FDA's. Plaintiff's implied warranty claim is also preempted by FDA's good manufacturing practices. A factfinder considering that claim could find Medtronic liable if a manufacturing defect rendered plaintiff's pacemaker unreasonably dangerous. See Mass. Gen. L. ch. 106, 2-314; ___ Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass. ______ _________________ 1988) (noting that Massachusetts law on implied warranty is "congruent, in all material respects, with the principles expressed in Restatement (Second) of Torts 402A (1965), the Restatement's definition of a seller's strict liability for harm suffered by a user or consumer of a seller's product"). This means that under Massachusetts law Medtronic could be found liable even if it meticulously followed FDA's good manufacturing practices. For these reasons, plaintiff's breach of implied warranty claim is preempted.4 ____________________ 4. One way to ensure that a factfinder applies a standard not adding to or differing from FDA regulations is to supplant the common law standard with FDA's requirements. We find nothing to support that Congress intended such a radical, unwieldy form of preemption, however, particularly where Congress did not intend to create a private right of action under the Federal Food, Drug, and Cosmetic Act. See ___ -16- 16 Plaintiff argues that her claims are not preempted because she is alleging that her particular device is defective. This claim, according to plaintiff, is analogous to a claim that the device is contaminated. She argues that her claims are not preempted because King v. Collagen Corp., ____ ______________ 983 F.2d at 1134-35, excised claims arising from contaminated devices from the body of claims preempted by the MDA. Plaintiff's argument is based on a misunderstanding of our remarks in King v. Collagen Corp., 983 F.2d at 1134- ____ _______________ 35. We stated: The language of [the MDA preemption clause] . . . demonstrate[s] a field of preemption which is broad, but limited. Any state requirement which, in effect, establishes a new substantive requirement for the device in a regulated area such as labeling, is preempted. 21 C.F.R. 808.1(d)(6)(ii). As the Seventh Circuit noted, however, [the clause] does not preempt such claims as negligent implantation or removal of devices, or claims arising out of contaminated ____________ devices. _______ Id. (emphasis added) (citing Slater v. Optical Radiation ___ ______ __________________ Corp., 961 F.2d at 1334). _____ The sentence regarding contaminated devices follows our statement that "[a]ny state requirement which, in effect, establishes a new substantive requirement for the device in a regulated area such as labeling, is preempted." Plaintiff's claims in this case, if successful, would establish ____________________ Rodriguez v. SK & F Co., 833 F.2d 8, 9 (1st Cir. 1987). _________ __________ -17- 17 requirements in areas that FDA already regulates, i.e., ____ labeling and manufacturing. Accordingly, this is not a case where plaintiff may maintain a claim arising out of an individually defective device. We need not address in this case which, if any, "claims arising out of contaminated devices" might not be preempted. We express no opinion on whether products liability claims are preempted only if the manufacturer complied with applicable FDA regulations. See Reiter v. Zimmer, 830 F. ___ ______ ______ Supp. 199, 204 (S.D.N.Y. 1993) (refusing to extend preemptive reach of MDA to negligence claim against manufacturer that allegedly violated FDA requirements); see also Slater, 961 ___ ____ ______ F.2d at 1334 (scope of preemption under MDA "is limited to efforts by states to impose sanctions for compliance with federal regulations"). The complaint contains no allegations regarding Medtronic's noncompliance with FDA regulations, and plaintiff has offered no evidence that Medtronic violated any FDA requirement. Our holding is limited to the facts and claims in this case. For the foregoing reasons, the order granting summary judgment for defendant is Affirmed. _________ -18- 18