King, J.
Edward McNulty (McNulty), the recipient of an inflatable penile prosthesis, brings this suit against the implanting surgeon and Medical Engineering Corporation (MEC) on account of injuries sustained when the device allegedly malfunctioned. McNulty claims that the device was designed, manufactured and distributed by MEC (formerly Surgitek) and that MEC is liable for: (i) negligent design, manufacture and marketing of the device; (ii) negligent failure to warn that the device was defective; and (iii) breach of the warranty of merchantability and fitness for use. MEC now moves for summaiy judgment and argues that the *563 plaintiffs state law product liability claims are preempted by the 1976 Medical Devices Amendments (MDA) to the Federal Food, Drug, and Cosmetic Act codified at 21 U.S.C. §§301-92. Upon consideration of the memoranda submitted by McNulty and MEC and after a hearing, MEC’s motion for summary judgment is denied.
Regulatory Background
The parties agree that under the Federal Drug Administration’s (FDA) regulatory scheme the Uniflate 1000 is a Class III product. Class III devices are subject to the 1976 Medical Device Amendments to the Food, Drug and Cosmetic Act, 21 U.S.C. 360, et seq. and, ordinarily, such products must obtain premarket approval. In certain cases, however, manufacturers of Class III devices can bring their products to market without meeting the stringent FDA premarket requirements. The so-called “510(k) notification” approach allows a manufacturer to market a device that is deemed “substantially equivalent” to a device that was on the market before the 1976 enactment of the MDA. The parties agree that the Uniflate 1000 was on the market as a 510(k) “substantially equivalent” product and that it was not subject to the more rigorous premarket approval process.
On January 6, 1988 the FDA notified Surgitek that it could begin marketing the device in question as a 510(k) “substantially equivalent” product. The FDA stressed that its finding of 510(k) substantial equivalence did not amount to agency approval of the product:
This letter immediately will allow you to begin marketing your device as described. An FDA finding of substantial equivalence of your device to a preamendments device results in a Classification for your device and permits your device to proceed to the market, but it does not mean that FDA approves your device. Therefore, you may not promote or in anyway represent your device or its labeling as being approved by FDA . . . (Emphasis in original.)
MEC now brings this motion for summary judgment and argues that 21 U.S.C. §360k(a) preempts McNulty’s state common law claims. 21 U.S.C. §360k(a) states in full that:
Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement... (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
DISCUSSION
Summary judgment shall be granted where (1) there are no material facts in dispute and (2) the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank. v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56(c). The moving party bears the burden of affirmatively demonstrating these elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A parly moving for summary judgment, who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving parly establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The only issue before the court is whether, as a matter of law, McNulty’s state law tort claims are preempted by the MDA. MEC argues that the MDA both implicitly and explicitly preempts state tort law claims against the manufacturers of Class III medical devices.
In order to avoid “unintended encroachment on the authority of the states,” courts should construe federal law with a heavy presumption against preemption. CSXTransp. v. Easterwood, U.S., 113 S.Ct 1732, 1737 (1993); Cipollone v. Liggett Group, U.S., 112 S.Ct. 2608, 2618 (1992). Courts are particularly reluctant to find preemption where such a finding would leave injured plaintiffs without a judicial remedy. See, e.g. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 251 (1984). Congressional intent is the touchstone of preemption analysis. Cipollone, 112 S.Ct. at 2617. “Congress’ intent may be explicitly stated in the statute’s language or implicitly contained in its structure and purpose.” Id.
Section 360k(a) of Title 21 provides that “no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement . . . which is different from, or in addition to, any requirement applicable under this chapter . . .” Id. (emphasis added).
MEC maintains that the word “requirement” was expressly intended to include state tort law, and they cite several cases to support that position, including: King v. Collagen Corp., 983 F.2d 1130 (1st Cir. 1993); Stamps v. Collagen Corp., 984F.2d 1416,1424 (5th Cir. 1993); and Mendes v. Medtronic, Inc., 18 F.3d 13 (1st Cir. 1994).
In Mendes, the First Circuit adopted what is perhaps the broadest interpretation of section 360k and its preemptive effect of any decision on the subject. In that case, the plaintiff brought state common law *564 claims against the manufacturer of a failed pacemaker — a Class III product brought to market as a so-called 510k “substantially equivalent” product — for breach of implied warranty, negligent failure to warn, and negligent manufacture. Mendes, 18 F.3d 13. The court limited itself to an express preemption analysis and held that, “comparing the requirements imposed by the Act with plaintiffs [state common law] claims,” the state claims are preempted by the MDA. Mendes, 18 F.3d at 18.
Neither the Massachusetts Supreme Judicial Court nor the Appeals Court have decided whether 360k(a) preempts state tort law under any circumstances. Other jurisdictions, however, have examined the issue and reasoned convincingly that the MDA does not always preempt state tort law. See, e.g., National Bank of Commerce v. Kimberly-Clark Corp., 38 F.3d 988 (8th Cir. 1994); Olver v. Johnson & Johnson, Inc., 863 F.Supp. 251 (W.D. Pa. 1994); Oja v. Howmedica, Inc., 848 F.Supp. 905 (D. Colo. 1994); Ginochio v. Surgikos, Inc., 864 F.Supp. 948 (N.D. Cal. 1994); Mulligan v. Pfizer, 850 F.Supp. 633 (S.D. 1994); Haudrich v. Howmedica, Inc., 642 N.E.2d 206 (111. App. 5 Dist., 1994); Larsen v. Pacesetter Systems, Inc., 837 P.2d 1273 (Haw. 1992), opinion amended in part on grant of reh’g, 843 P.2d 144 (Haw. 1992); Evarets v. Intermedies Intraocular, Inc., 34 Cal.Rptr.2d 852 (Cal.Ct.App. 1994). See also, Roberts. Adler & Richard A. Mann, Preemption and Medical Devices: The Courts Run Amok, 59 Mo.L.Rev. 895 (1994). Indeed, several cases have already expressly disapproved of the sweeping preemption found by the First Circuit in Mendes. Oja v. Howmedica, Inc., supra; Ministry of Health, Province of Ontario, Canada v. Shiley, Inc., 858 F.Supp. 1426 (C.D. Cal. 1994); Ginochio v. Surgikos, Inc., supra; Fogal v. Steinfeld, 620 N.Y.S.2d 875 (N.Y.Sup. 1994); Haudrich v. Howmedica, Inc., supra.
Moreover, Mendes is distinguishable from the present case with regard to McNulty’s design defect claim. The plaintiff in Mendes abandoned his design defect claim and the court never ruled on whether such a claim would be preempted where the product in question was not subject to premarket approval but was brought to market under the 510k notification process. Id. Since McNulty has not abandoned his design defect claim and the Uniflate 1000 was a “substantially equivalent” product and never received premarket approval, using the comparison approach employed in Mendes, there are no applicable MDA requirements to preempt McNulty’s design defect claim. See, Larsen v. Pacesetter Systems, 837 P.2d 1273 (Haw. 1992) (design defect claims not preempted where FDA never approved device design because device was found to be substantially equivalent to pre-MDA devices); see also Stamps, 984 F.2d at 1419, 1421-22 (discussing Moore v. Kimberly-Clark Corp., 867 F.2d 243, 246 (5th Cir. 1989) (design defect claims are not preempted by requirements applicable to tampons, which are Class II devices not subject to premarket approval)).
In this court’s view, the language of section 360k falls well short of expressing a clear intent to preempt state tort law. It appears instead from the words “no State or political subdivision” that Congress intended to prevent states from legislating in the field. Had Congress intended the express preemption of state court tort law, they could easily have said so.[2]
Finally, as argued by McNulty, the legislative history of the MDA does not support a theory that Congress intended to immunize manufacturers of Class III devices from state tort liability. See e.g. Haudrich v. Howmedica, Inc., 642 N.E.2d at 211; Robert S. Adler & Richard A. Mann, Preemption and Medical Devices: The Courts Run Amok, 59 Mo.L.Rev. at 929-42.
In sum, the court is unwilling to leave McNulty without any judicial recourse where the device in question was not even subject to the premarket approval process. In light of the recent cases disapproving of the Mendes decision, and because the court is troubled by any finding of preemption of state common law remedies given the ambiguous intent of section 360k(a), the court respectfully declines to follow Mendes, and chooses instead to align itself with those courts that have found that section 360k(a) does not preempt state tort law remedies.
ORDER
For the foregoing reasons, Medical Engineering Corporation’s motion for summary judgment is DENIED.

Support for this view may be found in another section of the MDA itself. 21 U.S.C. §360h(d), entitled “effect on other liability,” provides:
Compliance with an order under this section shall not relieve any person of liability under Federal or State law. In awarding damages for economic loss in an action brought for the enforcement of any such liability, the value to the plaintiff in such action of any remedy provided him under such order shall be taken into account. Id. (emphasis added).
This section plainly indicates Congress’ understanding that the MDA would not preempt altogether a plaintiffs state court tort remedies.