Wilson v. Bradlees                    CV-93-47-JD    11/08/95
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE

Elizabeth Wilson, et al.

     v.                                    Civil No. 93-47-JD

Bradlees of New England, Inc., et al.


                            O R D E R


     On August 9, 1995, the court denied defendant Union

Underwear Company, Inc.'s ("Union Underwear") motion for summary

judgment (document no. 107); defendant Bradlees of New England,,

Inc.'s ("Bradlees") motion for partial summary judgment (document

no. 108); third party defendant Union Ink Company's ("Union Ink")

amended motion for summary judgment (document no. 113); and

defendant Sharkey's Sportwear Company, Inc.'s ("Sharkey's") and

defendant Paradise Screen Printing Company's ("Paradise") motion

for summary judgment (document no. 114).  The order was based on

the court's legal ruling that the Flammable Fabrics Act ("FFA"),

15 U.S.C. § 1191 et seq., does not preempt state common law

claims based on any standard not identical to the federal

standard designated as Commercial Standard 191-53 ("CS 191-53").

     Before the court is Union Underwear's motion for recon-

sideration (document no. 125) of the August 9, 1995, order. The

motion is joined by third party defendant Tubelite Company, Inc.

(document no. 132); third party defendant Flexible Products

Company (document no. 131); and third party defendant Union Ink (document no. 124).

Also before the court is Union Underwear's motion for certification to take an interlocutory appeal of the August 9, 1995, order pursuant to 28 U.S.C. § 1292(B) (document no. 126). The motion is joined by third party defendant Tubelite Company, Inc. (document no. 132); third party defendant Flexible Products Company (document no. 131); and third party defendant Union Ink (document no. 124).

Discussion

The court has broad discretion when ruling on a motion to reconsider a prior ruling. E.g., Serrano-Perez v. FMC Corp., 985 F.2d 625, 628 (1st Cir. 1993). The court will reconsider its August 9, 1995, ruling that the FFA does not preempt the plaintiffs' common law claims.

The FFA provides:

**Preemption of Federal Standards**

Except as provided in subsections (b) and (c) of this section, whenever a flammability standard or other regulation for a fabric, related material, or product is in effect under this chapter, no State or political subdivision of a State may establish or continue in effect a flammability standard or other regulation for such a fabric, related material, or product if the standard or other regulation is designed to protect against the same risk of occurrence of fire with respect to which the standard or other regulation under

2

> this chapter is in effect unless the State or political
> subdivision standard or other regulation is identical
> to the Federal standard or other regulation.

15 U.S.C.A. § 1203(a) (West 1982).  The parties agree that the product at issue satisfied the applicable federal flammability standard, CS 191-53, and that the exceptions provided by subsections (b) and (c) do not apply.  Thus, the controlling question is whether § 1203(a) bars the plaintiffs from maintaining state common law claims for strict liability, negligence, and breach of implied warranties to the extent that such claims may be based on a flammability standard not identical to CS 191-53.

Congress' intent, as "explicitly stated in the statute's language or implicitly contained in its structure and purpose," Cipollone v. Liggett Group, 112 S. Ct. 2608, 2617 (1992), is the "touchstone of preemption analysis," Mendes v. Medtronic, Inc., 18 F.3d 13, 16 (1st Cir. 1994).  The First Circuit has made clear that where Congress has included an express preemption clause in a statute, the court "ought to limit [its inquiry] to the preemptive reach of that provision without essaying any further analysis under the various theories of implied preemption." Id. (quoting Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 823 (1st Cir. 1992)).  Express preemption may extend to state common law claims, such as those advanced by the plaintiffs in this

3

case, along with state statutes, regulations, or ordinances. E.g., id. (citing cases).

In its motion, Union Underwear asserts that the court's prior order is contrary to the First Circuit's post-Cipollone decisions in Mendes and King v. E.I. Dupont de Nemours & Co. , 996 F.2d 1346 (1st Cir.), cert. dismissed, 114 S. Ct. 490 (1993), two cases in which common law claims were expressly preempted by federal statute.

In Mendes, the plaintiff brought a products liability action against the manufacturer of her pacemaker alleging, inter alia, negligence, failure to warn, and breach of an implied warranty of merchantability. 18 F.3d at 15. The First Circuit affirmed the district court's entry of summary judgment on the grounds that the common law claims where preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360k(a). Id. at 14. The MDA contained the following express preemption provision:

> [N]o State or political subdivision may establish or
> continue in effect with respect to a device intended
> for human use any requirement --
> (1) which is different from, or in addition to, any
> requirement applicable under [the Federal Food, Drug,
> and Cosmetic Act] to the device, and
> (2) which relates to the safety or effectiveness of the
> device or to any other matter included in a requirement
> applicable to the device under [the Federal Food, Drug,
> and Cosmetic Act].

4

_Id._ at 16 (citing 21 U.S.C. § 360k(a)). The court ruled that the statutory language manifested a clear congressional intent to preempt any claim the resolution of which would establish a state "requirement" different from that established by the MDA. _See id._ The court reasoned that the scope of such preemption necessarily extends to common law claims because

> [t]he common law, no less than agency regulations and statutes, can impose "requirements" on a manufacturer. The tort and implied warranty theories of products liability are regulatory in that the "obligation to pay compensation can be . . . a potent method of governing conduct and controlling policy." _Cipollone_, 112 S. Ct. at 2620. . . . Products liability "regulation" under the common law imposes requirements by case law precedent.

_Id._ at 18 (citations and internal quotation marks omitted). The First Circuit ruled that § 360k(a) preempts the plaintiffs common law claims because each claim, if successful, would yield a common law standard or "regulation" different from that established by the federal government. _See id._

In _King_, the plaintiffs brought an action against certain manufacturers of herbicides alleging negligence and strict liability for the failure to provide adequate warnings. 996 F.2d at 1347. The First Circuit affirmed the district court's entry of summary judgment on the ground that the common law claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide

5

Act ("FIFRA"), 7 U.S.C. § 136-136y.  FIFRA contained the following provision:

> (a) In general.  A State may regulate the sale or use of any federally registered pesticide or device used in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
> (b) Uniformity.  Such state shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

Id. at 1348 (citing 7 U.S.C. § 136v).  In construing the provision, the First Circuit noted that "Cipollone convinces us that the term `requirements' in section 136v(b) `sweeps broadly and suggests no distinction between positive enactments and the common law.'"  Id. at 1349 (quoting Pappas v. Upjohn Co., 985 F.2d 516, 518 (11th Cir. 1993)).  The court then determined that the successful litigation of the common law claims necessarily would violate the preemption provision:

> [t]he warnings on the labels of the herbicides [the plaintiffs] used in spraying were approved by the EPA, as FIFRA required.  If the plaintiffs could recover on their state law claims that, despite this labeling, the defendants had failed to provide adequate warning, those additional warnings necessarily would be "in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b).

Id.

The court finds that, in view of the First Circuit's recent decisions of Mendes and King, its August 9, 1995, order was based on an overly narrow reading of the unambiguous language of

6

§ 1203(a). Upon reconsideration, it is apparent that the terms "standard or other regulation," like the term "requirements in [FIFRA], sweep[] broadly and suggests no distinction between positive enactments and the common law." King, 996 F.2d at 1350 (quoting Cipollone, 112 S. Ct. at 2620). Accordingly, the court, still mindful of the presumption against preemption, e.g., Mendes, 18 F.3d at 16, vacates its prior ruling and finds that the FFA expressly preempts any common law claim based on a "regulation or standard . . . designed to protect against the same risk of occurrence of fire" that is not "identical to the Federal standard" established by CS 191-53. See 15 U.S.C. § 1203(a).[1]

The court next "scrutinize[s] the plaintiff[s'] claims to determine whether the successful litigation of any of them would "establish or continue in effect" a standard or regulation other than that established by the federal government. Mendes, 18 F.3d at 16; see Levesque v. Miles, Inc., 816 F. Supp. 61, 64 (D.N.H. 1993) (when faced with express preemption, "the only remaining question is whether a particular state statute [or cause of

---

[1]The court's finding of express preemption forecloses inquiry into implied preemption "because the fact that Congress included it in the [statute] implies that matters beyond its reach are not preempted." Levesque, 816 F. Supp. at 68 (quoting King v. Collagen Corp., 983 F.2d 1130, 1134 (1st Cir.), cert. dismissed, 114 S. Ct. 84 (1993)).

7

action] intrudes into the federal pale").  The plaintiffs describe their common law claims for negligence, strict liability, and breach of warranty as asserting liability for "the defective nature of the garments and the defendants' failure to warn of the nature of the hazards posed by those garments." Plaintiffs' Memorandum in Objection to Motion for Summary Judgment at 3.  The court first will analyze the defective nature claims and then will address the failure to warn claims.

The common law claims based on the "defective nature" of the sweatshirt are, by definition, performance-based claims.  The viability of each claim, whether sounding in strict liability, negligence, or breach of an implied warranty, hinges on the plaintiffs' ability to prove that the product did not satisfy applicable performance standards.  Given the undisputed fact that the product satisfied the applicable federal flammability standard, any recovery at common law necessarily would be based on a safety standard other than one "identical to the Federal standard" established by CS 191-53.  See 15 U.S.C. § 1203(a). Thus, each of the plaintiffs' claims is preempted to the extent they assert liability for the "defective nature" of the sweatshirt.

The common law claims based on the failure to warn require additional preemption analysis.  The plaintiffs assert that,

8

unlike the performance-based claims, claims based on warnings or labelling do not contravene the FFA regulatory scheme. They argue that

> [b]oth the statute and regulations are silent on the issue of what warnings, if any, are appropriate. . . . Since federal law is silent on this issue, Congress, even if it intended to leave the inadequate measure of safety provided in CS 191-53 as the only permissible performance standard, cannot have intended to prevent the development of alternative common law duties which would protect the public, by ensuring that they were adequately warned of the hazards presented.

Plaintiff's Memorandum in Opposition to Summary Judgment at 22.

The plaintiffs correctly observe that a successful failure to warn claim would not directly result in a flammability standard other than CS 191-53 but, instead, would impose a related duty to warn consumers of the safety risks associated with flammable fabrics. However, this formalistic distinction does not place the failure to warn claims beyond the preemptive reach of the FFA, which expressly extends to state law standards or regulations that "protect against the same risk of occurrence of fire." 15 U.S.C. § 1203(a). The plaintiffs concede that their failure to warn claims advance the theory that "those engaged in the garment trade [have a duty] to at least warn the public of the fire hazards clothing presents." Plaintiff's Memorandum in Opposition to Summary Judgment at 22. The court finds that the failure to warn claims are preempted because, if

9

successful, each such common law claim necessarily would give rise to state law regulation or duty "designed to protect against the same risk" of fire-related injuries protected by the performance-based standards of CS 191-53.[2]


                            Conclusion

The defendants' motions for reconsideration (document nos. 124, 125, 131, 132) are granted.  The defendants' motions for certification to take an interlocutory appeal (document nos. 124, 126, 131, 132) are moot.

Following reconsideration, the court finds that the plaintiffs' common law claims are expressly preempted by the FFA. The court's order of August 9, 1990, (document no. 122), is vacated to the extent that it is inconsistent with this order.

The court grants the following motions, each of which had been denied by prior order of the court:  Flexible Product's motion to dismiss (document no. 115); Sharkey's and Paradise's

_____

    [2]The court's finding that the failure to warn claims protect against the same risks protected by the performance-based claims is entirely consistent with New Hampshire law because "[t]he duty to warn is part of the general duty to design, manufacture, and sell products that are reasonably safe for their foreseeable uses."  Cheshire Med. Ctr. v. W.R. Grace & Co., 853 F. Supp. 564, 566-67 (D.N.H. 1994) (quoting Chellman v. Saab-Scancia AB, 138 N.H. 73, 78, 637 A.2d 148, 150 (N.H. 1993)), aff'd 49 F.3d 26 (1st Cir. 1995).

                              10

motion for summary judgment (document no. 114); Union Ink's motion for summary judgment (document no. 113); Tubelite's motion for summary judgment (document no. 111); Desmond Process Supply's joinder in motion for summary judgment (document no. 110); Union Underwear's motion for summary judgment (document no. 107). Each of the defendants listed in this paragraph are dismissed from the case.

On August 28, 1995, the court automatically stayed this action as to Bradlees pursuant to 11 U.S.C. § 362. However, the stay does not bar the court from dismissing a claim against a debtor in bankruptcy where such action "does not interfere in any way with the property of the bankrupt estate or the bankruptcy case [and] is not inconsistent with the automatic stay provision." Royal Dynasty, Inc. v. Chin, 37 Mass.App.Ct 171, 171-72, 638 N.E.2d 921, 922 (1994) (citations omitted); see Teel v. American Steel Foundaries, 529 F. Supp. 337, 346 (E.D.Mo. 1981) (automatic stay does not prevent district court from dismissing action against debtor). Accordingly, Bradlees is dismissed from this action on the grounds of federal preemption. Counsel for Bradlees is ordered to promptly notify the bankruptcy court of the dismissal.

The clerk is ordered to close this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

November 8, 1995

cc:   Thomas E. Craig, Esquire
      Michael P. Lehman, Esquire
      E. Donald Dufresne, Esquire
      Michael J. Goldman, Esquire
      Dennis T. Ducharme, Esquire
      Robert L. Chiesa, Esquire
      Richard C. Nelson, Esquire
      Jill K. Blackmer, Esquire
      Mark L. Mallory, Esquire